*In re* APPLICATION OF CONSUMERS ENERGY TO
INCREASE ELECTRIC RATES (ON REMAND)

Docket No. 317434. Submitted February 19, 2016, at Lansing. Decided
July 5, 2016, at 9:05 a.m.

Consumers Energy filed an application in the Michigan Public
Service Commission (PSC), requesting rate relief to cover the costs
associated with its ongoing monetary investments in the advanced
metering infrastructure (AMI) program. In 2013, Consumers and
the Attorney General entered into a settlement agreement regard-
ing the requested annual rate increase, and the Attorney General
reserved for future resolution two issues: a request to the PSC to
suspend Consumers' AMI program and an objection to the amount
of the opt-out tariff charged by Consumers in the event a customer
did not participate in that program. The Attorney General later
challenged those reserved issues in the PSC. In June 2013, the
PSC issued an order approving Consumers' continuation of the
AMI program and approving Consumers' opt-out tariffs. The
Attorney General appealed the PSC's order regarding the AMI
program, arguing that the record lacked competent, material, and
substantial evidence to support a finding by the PSC that the
benefit of the program outweighed its costs. The Court of Appeals
consolidated that case with a separate appeal (Docket No. 317456)
in which certain Consumers customers challenged the opt-out
tariffs. In an unpublished opinion per curiam, issued April 30, 2015
(Docket Nos. 317434 and 317456), the Court of Appeals, O'CONNELL,
P.J., and FORT HOOD and GADOLA, JJ., affirmed the PSC rate
increase for the AMI program in Docket No. 317434, and because
the PSC gave only a cursory analysis of the opt-out tariffs during
the lower court proceeding, in Docket No. 317456 it remanded the
case for a contested case hearing on that issue. The Attorney
General moved for reconsideration of the opinion, which the Court
of Appeals denied (O'CONNELL, P.J., would have granted the mo-
tion). The Attorney General then sought leave to appeal in Docket
No. 317434. In lieu of granting leave to appeal, the Supreme Court
reversed the judgment of the Court of Appeals and remanded the
case to the Court of Appeals for consideration of the merits of the
Attorney General's arguments in that appeal. *In re Application of
Consumers Energy to Increase Electric Rates*, 498 Mich 967 (2016).

On remand, the Court of Appeals *held*:

1. MCL 652.25 provides, in part, that all rates prescribed by the PSC must be lawful and reasonable. A PSC order is unlawful when the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. An order is unreasonable if it is not supported by the evidence.

2. Const 1963, art 6, § 28 provides that a final PSC order must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. An appellate court must give due deference to the PSC's administrative expertise and will not substitute its judgment for that of the PSC. Matters of credibility and the weight attributed to expert testimony are for the PSC to decide, not an appellate court. In this case, the PSC did not err by approving Consumers' AMI program and the installation of the meters. A Consumers witness provided testimony that the benefits of the program outweighed its costs, specifically that the program had an estimated 20-year net present value of $42 million. Accordingly, the PSC order approving the AMI program was supported by competent, material, and substantial evidence on the whole record, and the rate was lawful and reasonable. The PSC was entitled to rely on the testimony of the Consumers witness rather than the testimony of other witnesses who reached different conclusions.

3. While the 2013 settlement agreement between the Attorney General and Consumers did not resolve two issues—a request to the PSC to suspend Consumers' AMI program and an objection to the amount of the opt-out tariff—the Attorney General only raised the AMI program issue in the initial appeal in the Court of Appeals; it did not challenge the opt-out tariff in Docket No. 317434. The Supreme Court remand order directed the Court of Appeals to consider the merits of the Attorney General's claim in Docket No. 317434; the order did not disturb the Court of Appeals decision in Docket No. 317456, which remanded the case for a contested case hearing regarding the amount of the opt-out tariffs. For that reason, the only issue in this remand was whether there was sufficient evidence to support the PSC's conclusion that the benefits of the AMI program outweighed its costs.

Affirmed.

O'CONNELL, P.J., dissenting, disagreed with the majority's analysis regarding whether there was sufficient evidence to support the PSC's decision to approve the AMI program. In holding that the PSC's conclusion—the benefits of the program outweighed its costs—was supported by competent, material, and substantial evidence on the whole record, the majority erroneously relied on the same analysis by the PSC that was rejected as

insufficient by the Court in the original appeal in Docket No. 317456. The Supreme Court remand order directed the Court of Appeals to address the issues raised by the Attorney General in its motion for reconsideration of its original opinion, which included those preserved in the 2013 settlement agreement, not just whether the benefit of the AMI program outweighed its costs. Consumers submitted the testimony of only one witness regarding the costs and benefits of the program, and that testimony which conflicted with that of the Attorney General's expert witness, which was better supported by data and analysis. For this reason, the PSC's analysis of the issue was not reasonable or supported by the evidence. Judge O'CONNELL would have remanded this case to the PSC for it to fully address the two issues reserved by the Attorney General in the stipulated settlement agreement, including the cost of the opt-out tariff.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Michael Moody*, Assistant Attorney General, for the Attorney General.

*B. Eric Restuccia*, Deputy Solicitor General, and *Steven D. Hughey*, *Lauren D. Donofrio*, and *Amit T. Sing*, Assistant Attorneys General, for the Michigan Public Service Commission.

*Jon R. Robinson*, *Raymond E. McQuillan*, and *Robert W. Beach* for Consumers Energy Company.

ON REMAND

Before: O'CONNELL, P.J., and FORT HOOD and GADOLA, JJ.

GADOLA, J. In *In re Application of Consumers Energy to Increase Electric Rates*, 498 Mich 967 (2016), our Supreme Court reversed the portion of this Court's judgment in *Attorney General v Mich Pub Serv Comm*, unpublished opinion per curiam of the Court of Ap-

peals, issued April 30, 2015 (Docket Nos. 317434 and
317456), that addressed the Attorney General's claim
of appeal in Docket No. 317434 and remanded the case
for consideration of the merits of that appeal.[1]

Our original opinion in this case, *Attorney General*,
unpub op at 2-3, contains a concise statement of the
underlying facts and proceedings:

> Several years ago, Consumers Energy began implement-
> ing an [advanced metering infrastructure (AMI)][1] program
> in Michigan. On November 4, 2010, the [Michigan Public
> Service Commission (PSC)] issued an order in Case No.
> U-16191 that approved Consumers Energy's pilot AMI
> program, but required Consumers Energy to meet certain
> conditions, such as providing information on the benefits
> and costs of the program, before approving full deployment
> of the AMI program. In *In re Application of Consumers
> Energy Co to Increase Rates*, unpublished opinion per
> curiam of the Court of Appeals, issued November 20, 2012
> (Docket Nos. 301318 and 301381), this Court affirmed the
> PSC's decision regarding Consumers Energy's pilot AMI
> program. On June 7, 2012, the PSC issued an order in Case
> No. U-16794 authorizing Consumers Energy to proceed
> with Phase 2 of its AMI deployment program. In that case,
> the PSC adopted $44.8 million in expenditures for the AMI
> program in Consumers Energy's rate base.
>
> On September 19, 2012, Consumers Energy filed an
> application requesting rate relief in the case underlying
> this appeal, Case No. U-17087, to cover, among other
> things, its ongoing investments associated with the AMI
> program. In addition, Consumers Energy sought approval
> of opt-out tariffs for customers who did not wish to
> participate in the AMI program. On October 19, 2012, an
> administrative law judge (ALJ) granted intervenor status
> to the Attorney General.

---

[1] The Attorney General's appeal was consolidated with that filed by
Michelle Rison and other individuals, who are customers of Consumers
Energy Company. That appeal (Docket No. 317456) is not affected by our
Supreme Court's remand order.

On May 7, 2013, the parties filed a settlement agreement in which they agreed to an annual rate increase of $89 million. However, in the agreement, the Attorney General reserved two issues for future resolution, including (1) a request to the PSC "to direct Consumers Energy to suspend the [AMI] program," and (2) an objection "to the amount of the 'opt-out' fee." The PSC entered an order on May 15, 2013, approving the settlement agreement. Thereafter, the Attorney General challenged the PSC's continued support of Phase 2 of Consumers Energy's AMI program and challenged Consumers Energy's application for approval of its opt-out tariffs.

In response, Consumers Energy argued that it prepared an updated business case analysis for its AMI program in March 2012, and that the analysis indicated a 20-year positive net present value (NPV) of $42 million for the AMI program. Consumers Energy noted that the Attorney General also sought suspension of its AMI program in Case Nos. U-16191 and U-16794 on the ground that the cost/benefit analysis used in each case was flawed, but that the PSC rejected the Attorney General's request in each case. The Attorney General argued that the PSC should suspend Consumers Energy's AMI program until a cost/benefit analysis showed that the program would bring value to customers. The Attorney General asserted that its analysis showed that the AMI program had a negative NPV, and that Consumers Energy's testimony regarding savings from the AMI program was speculative.

On June 28, 2013, the PSC issued an order approving Consumers Energy's continuation of the AMI program and approving Consumers Energy's opt-out tariffs.

---

[1] An AMI meter, also known as a smart meter, is capable of collecting near-real-time data on a customer's energy usage and reporting the data to the utility at frequent intervals. *In re Applications of Detroit Edison Co*, 296 Mich App 101, 114; 817 NW2d 630 (2012).

The standard of review for PSC orders is narrow and well defined.[2] Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Mich Consol Gas Co v Pub Serv Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by clear and satisfactory evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). An order is unreasonable if it is not supported

---

[2] Although the dissent correctly points out that the Attorney General's settlement agreement did not resolve two issues—(1) a request to the PSC to suspend the AMI program and (2) an objection to the amount of the opt-out fee if the program continued—the Attorney General only contested the first issue in its appeal in Docket No. 317434, arguing that the PSC should not have allowed the AMI program to continue because the record lacked competent, material, and substantial evidence that the benefits of the program outweighed its costs. The Attorney General did not object to the amount of the opt-out tariffs in its appeal. Rather, in Docket No. 317456, the appellant customers objected to the amount of the opt-out tariffs. In that appeal, we concluded that the opt-out issue was "given only cursory analysis in the PSC lower court record," and therefore remanded the issue to the PSC for a contested case hearing. *Attorney General*, unpub op at 6. In its remand order, the Supreme Court directed us to consider the merits of the Attorney General's claim of appeal in Docket No. 317434. *In re Application of Consumers Energy to Increase Electric Rates*, 498 Mich at 967. The order did not disturb our ruling in Docket No. 317456. Accordingly, the Supreme Court's remand order provides that, despite the Attorney General's agreement to the $89 million rate increase, the Attorney General could still contest the continuance of the AMI program on the basis that the costs of the program outweighed its benefits. The only issue before this Court, therefore, is whether sufficient evidence supported the PSC's conclusion that the benefits of the AMI program outweighed its costs.

by the evidence. *Associated Truck Lines, Inc v Pub Serv Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966).

A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Attorney General v Pub Serv Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987).

We give due deference to the PSC's administrative expertise and will not substitute our judgment for that of the PSC. *Attorney General v Pub Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). We give respectful consideration to the PSC's construction of a statute that the PSC is empowered to execute, and this Court will not overrule that construction absent cogent reasons. *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 103, 108; 754 NW2d 259 (2008). If the language of a statute is vague or obscure, the PSC's construction serves as an aid in determining the legislative intent and will be given weight if it does not conflict with the language of the statute or the purpose of the Legislature. *Id*. at 103-104. However, the construction given to a statute by the PSC is not binding on us. *Id*. at 103. Whether the PSC exceeded the scope of its authority is a question of law that is reviewed de novo. *In re Complaint of Pelland Against Ameritech Mich*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

On appeal, the Attorney General argues that although Consumers maintained that its updated cost-benefit analysis indicated a $42 million NPV over 20 years for the AMI program, Consumers could not confirm the estimated savings and could not support its estimates. The Attorney General further argues that the alleged savings were inflated and were not based on any studies of Consumers' service territory. In addition, the Attorney General argues that the PSC did

not do an independent analysis of Consumers' cost-benefit analysis but instead erroneously relied on prior factual determinations derived from a different cost-benefit analysis to find that Consumers' costs were reasonable and prudent. We disagree.[3]

Consumers' witness Lauren Youngdahl, the Smart Grid Customer Engagement Programs Manager, testified that the AMI program would advance the modernization of the electric grid, and that its benefits could be divided into five key categories: (1) customer programs such as pricing demand response (35% of total benefits), (2) advanced energy theft detection (22% of total benefits), (3) reduced meter reading costs (19% of total benefits), (4) other operating and maintenance (O&M) and avoided capital savings (17% of total ben-

---

[3] We reject the PSC's argument that the Attorney General lacks standing to challenge the PSC's June 28, 2013 order. A party must be aggrieved by a lower court's decision to have standing to bring an appeal from that decision. MCR 7.203(A); *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 290-291; 715 NW2d 846 (2006). "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *Federated Ins Co*, 475 Mich at 291 (quotation marks omitted). The Attorney General had the statutory right to intervene to represent the interests of the people of this state. MCL 14.28. The Attorney General intervened because the PSC's decision would affect the rates paid by Consumers' Michigan customers. The Attorney General can be said to be a party in interest with standing to appeal the PSC's order. MCL 462.26(1).

Similarly, the argument by Consumers and the PSC that the Attorney General's appeal is a collateral attack on prior orders is without merit. Such an attack is precluded. *Kosch v Kosch*, 233 Mich App 346, 353; 592 NW2d 434 (1999). In its June 28, 2013 order in this case, the PSC made the latest in a series of decisions to allow Consumers' AMI program to go forward. The PSC's decision was based on an updated cost-benefit analysis prepared by Consumers for this case. The Attorney General may be making arguments similar to those made in prior cases, but the arguments are based on evidence presented in this case. The Attorney General's appeal is not a collateral attack.

efits), and (5) terminal value beyond the end date of the analysis (7% of total benefits).

Youngdahl relied on a business case analysis that was updated in March 2012, which indicated the AMI program had an overall 20-year NPV of $42 million. The business case included final pricing for smart meters, associated components for smart meters, vendor services, and meter installation. The business case reassessed and reduced anticipated IT infrastructure costs. The business case analysis included benefits confirmed by Phase 1 of the AMI pilot programming, including remote metering and meter event capabilities that would facilitate O&M cost reductions, improve employee safety, reduce customers' bills, reduce outage restoration times, and enhance energy consumption management.

Attorney General witness Sebastian Coppola recommended that the PSC suspend Consumers' AMI program. Coppola testified that his calculations indicated that the program had a negative NPV of $133.4 million. On appeal, the Attorney General emphasizes that the savings predicted by Consumers could not be confirmed and were not based on studies performed with Consumers' customers.

The essence of the Attorney General's argument is that the PSC's decision to continue funding Consumers' AMI program was not supported by sufficient evidence on the record. The Attorney General asserts that Consumers' savings figures were aspirational and were not based on actual studies of Consumers' own customers. The Attorney General relies on *In re Applications of Detroit Edison Co*, 296 Mich App 101; 817 NW2d 630 (2012), as support for the proposition that evidence consisting of "aspirational testimony describing [a program] in optimistic but speculative terms"

does not constitute sufficient evidence on which to approve a rate increase. *Id*. at 115. However, that case is distinguishable from the instant matter in that in this case, the settlement agreement established that Consumers was entitled to a revenue increase in the amount of $89 million. That revenue increase was unrelated to the issue of whether the PSC should direct Consumers to suspend its AMI program.

The parties presented contradictory testimony on Consumers' AMI program and whether the analysis presented by Consumers—which indicated the program would have an estimated 20-year NPV of $42 million—was sufficient to authorize Consumers to continue the program. However, the PSC was entitled to rely on the testimony presented by Consumers' witness even though other testimony reached opposite conclusions. *Great Lakes Steel Div of Nat'l Steel Corp v Mich Pub Serv Comm*, 130 Mich App 470, 481; 344 NW2d 321 (1983). The testimony given by Youngdahl was based on the updated business case, which contained data from Phase 1 of the AMI program and projections based on that data. The PSC emphasized that it would continue to review costs associated with Consumers' AMI program in each future rate case. The PSC's order that approved full deployment of Consumers' AMI program was supported by the requisite evidence, and it was not unlawful or unreasonable. MCL 462.26(8).

Affirmed.

FORT HOOD, J., concurred with GADOLA, J.

O'CONNELL, P.J. (*dissenting*).

I respectfully dissent.

The Attorney General's settlement in this case preserved two issues for further review: (1) a request to

the Public Service Commission (PSC) to suspend the advanced metering infrastructure (AMI) program and (2) should the program continue, an objection to the amount of the opt-out fee. These issues are based on the PSC's decision regarding the costs and benefits of the AMI program. Unfortunately, the PSC's decision regarding these two issues does not provide this Court with an opportunity to meaningfully review its decision. I would remand this case to the PSC with directions to fully address the two issues reserved by the Attorney General in its stipulated settlement agreement.

### I. THE MAJORITY OPINION

Our Supreme Court has remanded this case to specifically address the issues that the Attorney General preserved in its settlement agreement in this case:

> Pursuant to MCR 7.305(H)(1), in lieu of granting leave to appeal, we reverse that part of the Court of Appeals judgment that addressed the claim of appeal filed by the Attorney General, Docket No. 317434, and we remand this case to the Court of Appeals for consideration of the merits of that claim of appeal. The fact that the Attorney General stipulated to a settlement agreement that recognized a rate increase is not inconsistent with the Attorney General's appeal from the June 28, 2013 decision of the Michigan Public Service Commission. That decision resolved issues preserved by the Attorney General in the settlement agreement. Those preserved issues can be addressed independent of the $89 million in rate relief approved pursuant to the settlement agreement. This order does not disturb the Court of Appeals disposition in the consolidated case, Docket No. 317456. We express no opinion regarding the merits of the Attorney General's appeal. [*In re Application of Consumers Energy to Increase Electric Rates*, 498 Mich 967 (2016).]

Despite the fact that the PSC made only one finding—that petitioner, Consumers Energy, proved its case, a finding full of conclusory statements and absent reasoning or reference to the proofs—the majority opinion concludes that the PSC made sufficient findings on this issue such that Consumers proved its entitlement to recover costs for the AMI program. And the majority opinion does not address the opt-out fee other than to note that the PSC entered an order approving Consumers' opt-out tariffs.[1] I strongly disagree with the majority's analysis.

In our original opinion regarding the companion cases, *Attorney General v Mich Pub Serv Comm*, unpublished opinion per curiam of the Court of Appeals, issued April 30, 2015 (Docket Nos. 317434 and 317456), this Court concluded that the PSC gave only a cursory analysis to some of the issues presented in this case on the exact same lower court record, including a cursory analysis of the costs and benefits of the AMI program. As a result, we remanded Docket No. 317456 back to the PSC for a contested case hearing. However, in the instant appeal, the majority relies on the same cursory analysis this Court found fatal in our prior opinion.

I conclude that a cursory analysis is a cursory analysis is a cursory analysis, and no amount of parsing can save this case from the required remand. In my opinion, the majority's decision not to remand

---

[1] I read the Michigan Supreme Court's order as instructing this Court to address the issues preserved in the settlement agreement. In the settlement agreement, the Attorney General explicitly preserved the opt-out tariff issue. That issue is entwined with the recovery of costs issue: a reduced opt-out tariff would affect Consumers' expected revenues. Additionally—and most importantly—the PSC's failure to meaningfully address the issue despite the parties' arguments illustrates why the PSC's extremely brief decision is insufficient.

this case, which has the same lower court record as Docket No. 317456, is contradictory and defies logic.

## II. HISTORY OF THE PRESENT CASE

After this Court issued the first opinion in the original companion cases, the Attorney General filed a motion for reconsideration, asking this Court to consider two issues we did not consider in our prior opinion. The Attorney General was correct: our opinion did not address the Attorney General's concerns. Without explanation, the majority denied the Attorney General's request to reconsider our prior opinion and address those two issues. In an attempt to convince the majority that the Attorney General's motion for reconsideration was meritorious, I drafted a 22-page opinion on reconsideration. *In re Application of Consumers Energy to Increase Electric Rates*, unpublished order of the Court of Appeals, entered July 22, 2015 (Docket Nos. 317434 and 317456). At risk of reversal, the majority refused to address the merits of the Attorney General's motion on reconsideration. Appropriately, the Attorney General sought leave to appeal in the Supreme Court.

In what can only be considered the speed of sound by our Supreme Court's standards, the Court reversed that part of our prior opinion relating to Docket No. 317434 for our failure to address the two issues the Attorney General reserved in its stipulated settlement with Consumers. The Supreme Court directed us to consider the arguments raised by the Attorney General in its motion for reconsideration. But rather than respond to the Supreme Court's directive on remand, the majority's present opinion concludes that because the Attorney General did not appeal certain parts of the lower court rulings concerning the cost-benefit

analysis of the AMI program, it is free to ignore the Supreme Court's directive. Because the Court of Appeals is an inferior court to the Supreme Court, this Court has a duty to follow the Supreme Court's remand orders.[2] In my opinion, the majority's response to the Supreme Court's directions on remand risks a second reversal in the present case.

### III. ANALYSIS

The Attorney General contends that competent, material, and substantial evidence did not support the PSC's findings below. I agree.

We give due deference to the PSC's administrative expertise and will not substitute our judgment for that of the PSC. *Attorney General v Pub Serv Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). However, a final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Attorney General v Pub Serv Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987). Substantial evidence is evidence that a reasonable person would accept as sufficient to support the conclusion. *Wayne Co v Mich State Tax Comm*, 261 Mich App 174, 186-187; 682 NW2d 100 (2004).

The Attorney General contested Consumers' right to recover costs. The PSC may allow a utility to recover its costs "only when the utility proves that recovery of the costs is just and reasonable." *In re Applications of Detroit Edison Co*, 296 Mich App 101, 116; 817 NW2d 630 (2012).

---

[2] This Court must follow clear instructions in the Michigan Supreme Court's remand orders. See *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 544; 705 NW2d 365 (2005).

In this case, Consumers' AMI program called for installation of smart meters at a total cost of $750 million. Consumers asserted that the program would result in a net savings of $42 million dollars. However, only one witness, Lauren Youngdahl, testified regarding the costs and benefits of the program. Youngdahl did not support her testimony with any evidence—neither data nor details—but instead merely speculated on the basis of Consumers' plans for future years and offered conclusory assertions. Consumers refused to respond regarding how it calculated assumed customer savings for the future years and instead stated that it had estimated it would recover more in uncollectable expenses.

In contrast, the Attorney General's expert Sebastian Coppola testified that the cost-benefit analysis yielded a *negative* net result of about $133 million dollars.[3] Coppola supported his testimony with statistical analysis and data and pointed out several flaws in Consumers' methodology, including its small sample sizes. Even Consumers admitted that "[t]he savings related to energy conservation benefits cannot be confirmed at this time . . . ."

Regardless of the shortcomings in Consumers' proofs, in a scant three sentences that provided no reasoning whatsoever, the PSC found that Consumers' proofs were "more than sufficient." The PSC made no specific findings regarding the contested elements of the costs and benefits, but instead stated in general terms that it was not persuaded that the savings were overstated. Unlike the majority, I am not convinced that this analysis was reasonable and supported by

---

[3] Much like a spouse recently returned from a shopping spree who declares how much they have saved through the use of coupons, when they have still spent an amount far in excess of what they "saved."

sufficient evidence. Consumers' speculative proofs
were not sufficient to allow a reasonable person to
conclude that Consumers had justified the recovery
costs. And regarding the opt-out fee issue (which the
majority fails to address entirely), the PSC's decision
does not address the Attorney General's concerns or
make any specific findings. This Court is unable to
conduct a meaningful review of such a deficient deci-
sion.

### IV. CONCLUSION

On remand, the Supreme Court has ordered us to
address the issues preserved in the stipulated settle-
ment agreement. Those issues are (1) whether the AMI
program should be suspended because the PSC's deci-
sion lacked competent, material, and substantial evi-
dence, and (2) if the program should continue, whether
the opt-out tariffs are reasonable. For the reasons
stated above, meaningful review of these issues, par-
ticularly regarding the opt-out tariffs, is impossible
because the record lacks the factual findings necessary
to conduct such a review.

For the reasons stated, I would remand this case to
the PSC. I would retain jurisdiction.